SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

December 12, 1919.

## THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. STEPHANO REITANO, Alias GIOVANNI BINARO, Alias JOHN BARBARDO, Appellant.

(189 App. Div. 776.)

(1) LARCENY—FAILURE TO PROVE FACTS STATED BY PROSECUTING ATTORNEY IN OPENING ADDRESS—EVIDENCE—POSSESSION BY COMPANION OF DEFENDANT OF PART OF MONEY STOLEN.

A conviction for larceny will not be reversed because the testimony fell short of what the district attorney promised to prove in his opening address, provided he acted in good faith.

(2) SAME.

On a prosecution for larceny of money, a part of which consisted of a Russian 100-ruble note, evidence is admissible to show that a companion of the defendant, an Italian, though not an accomplice, had such a note in his possession shortly after the commission of the crime.

(3) SAME—ALIBI—FAILURE TO CLAIM AT TIME OF ARREST.

On the question of alibi it is proper for the prosecution to show that the defendant did not, at the time he was arrested, claim that he was not present at the time and place where the crime was committed.

APPEAL by the defendant, Stephano Reitano, from a judgment of the County Court of Kings county, rendered against him on the 24th day of June, 1918, convicting him of the crime of grand larceny in the second degree, and also from an order entered in said clerk's office on the same day denying his motion for a new trial.

Under names of Binaro or Barbardo he had been before convicted of the offense of robbery in the third degree. He was sentenced as a second offender to imprisonment in Sing Sing Prison for five years and six months.

*Robert M. Moore,* for the appellant.

*Ralph E. Hemstreet, Assistant District Attorney (Harry E. Lewis, District Attorney,* with him on the brief), for the respondent.

PUTNAM, J.:

The complaining witness, Farenuck, was a Russian laundry worker. On Friday, May 3, 1918 (a Russian holiday), he had been to Maspeth to collect a small debt. There he met a short stranger who seemed uncertain of the locality and asked to be directed to a business address. Farenuck said he did not know. Then, most opportunely, a confederate came up (a " tall man," the defendant), who gave the information, whereupon the short man handed out a $5 bill, but the defendant declined the money, and they all fell into friendly conversation. The short man boasted of having $8,000 cash, and said he would like to know how much the other two had. The tall man (defendant) excused himself and disappeared, but soon returned with a roll of bills. The three then came to Brooklyn, and Farenuck, wishing to show his resources, went into his house and came out with $60 cash, his bank book, and a 100 Russian ruble note. The two persons showed incre-

dulity, and even intimated that it was no bank book, but only a butcher's book.    To convince these doubters, Farenuck then went to the bank, his friends staying outside, and drew out the whole deposit, $170, whereupon the three went to a vacant lot. After some further performances they put the whole money of the group, with this ruble note, in a handkerchief which was eventually put under Farenuck's shirt, with direction to keep his hand on it on his journey home.    On opening the package at home there were only slips of waste paper.    This was about 10 A. M.

About 12:30 P. M. that day, Officer Ross arrested appellant on Carroll street, Brooklyn, when was found on his person $320 in United States currency and a $50 Liberty bond.    In his company was one Desapio, who was also arrested, in whose pocket (it appeared, though not proved) was found a 100-ruble note.    Appellant was clearly identified as the " tall man " of the two swindlers.

On this appeal two grounds for reversal are set forth:

1. In opening to the jury the district attorney had said that appellant's companion, Desapio, had in his pocket a 100-ruble note, although Desapio was not tried and was not one of the persons whom the complaining witness had identified.    This was excepted to by defendant's counsel.    When Reitano was cross-examined he was asked also if he had sold a 100-ruble note to Desapio, also if he had heard Desapio say that he had bought it for three dollars, to which defendant's counsel also objected, and took exception to the court's ruling.    The evidence that the 100-ruble note was found on Desapio when arrested, discussed in the jury's absence, was excluded.    This colloquy disclosed the grounds for counsel's expectation that he would be allowed to prove that Desapio had this ruble note. His good faith in speaking of this circumstance in the opening is thus established.    A conviction should not be reversed because later the testimony fell short of the promise of the

opening, provided the prosecuting counsel acted, as here, in evident good faith.

The coincidence of an Italian having money not of his country but a Russian 100-ruble note, within four hours after this larceny of money in which this note figured, was striking. Suppose such a 100-ruble note had been picked up on the ground near which the prisoner had just passed. That corroboration, though slight, still tended to confirm Farenuck's testimony describing the money taken from him. Although it did not appear that Desapio was an accomplice, the fact of his companionship with Reitano and such possession of what may be the fruit of the crime, I think were matters relevant for the jury. Of course, the positive identification of appellant by his victim was the substantial basis for this conviction.

2. When the prisoner had called witnesses as to his alibi as working for Scuderi, and had then himself taken the stand, he was asked on cross-examination if he had referred to his employment with Scuderi, 518 Henry street, when he was arrested, and he answered " Yes." Officer Ross (who had made the arrest) was recalled and contradicted this. This issue was not collateral. It touched the decisive point of the accused's whereabouts at this time, and bore on the question of the reality of his alibi. (Hoag v. Wright, 174 N. Y. 36.) If, as was there said, expert opinion as to handwriting is dangerous, and may be thoroughly tested to prevent injustice, we can apply like tests here, where the omission when arrested to tell where he had worked that forenoon would be of importance for the jury. I advise that the judgment of conviction be affirmed.

JENKS, P. J., RICH, BLACKMAR and JAYCOX, JJ., concurred.

Judgment of conviction of the County Court of Kings county affirmed.